UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


APOLLO DEWAYNE JOHNSON,

        Petitioner,

                                CASE NO. 2:11-CV-15229
    v.                            JUDGE NANCY G. EDMUNDS
                                MAGISTRATE JUDGE PAUL J. KOMIVES

JEFF WOODS,

        Respondent.
_____/

# REPORT AND RECOMMENDATION

*Table of Contents*

I.     RECOMMENDATION ................................................................. 1
II.    REPORT ................................................................................ 1
     A.    *Procedural History* .................................................... 1
     B.    *Factual Background Underlying Petitioner's Conviction* ............... 3
     C.    *Standard of Review* .................................................... 4
     D.    *Other Acts Evidence (Claim I)* .......................................... 7
     E.    *Ineffective Assistance of Counsel (Claims I & II)* ....................... 9
          1.    *Clearly Established Law* ...................................... 9
          2.    *Analysis* ................................................. 11
                a.  Other Acts Evidence ................................... 11
                b.  Shank ............................................. 12
     F.    *Recommendation Regarding Certificate of Appealability* ............... 14
          1.    *Legal Standard* ............................................ 14
          2.    *Analysis* ................................................. 16
     G.    *Conclusion* ......................................................... 16
III.   NOTICE TO PARTIES REGARDING OBJECTIONS ............................ 17

\*     \*     \*     \*     \*

I.    RECOMMENDATION: The Court should deny petitioner's application for the writ of habeas corpus and should deny petitioner a certificate of appealability.

II.   REPORT:

A.    *Procedural History*

      1.    Petitioner Apollo Dewayne Johnson is a state prisoner, currently confined at the

Chippewa Correctional Facility in Kincheloe, Michigan.

    2.    On May 19, 2009, petitioner was convicted of possession of a weapon by an inmate, MICH. COMP. LAWS § 800.283(4), following a jury trial in the Jackson County Circuit Court. On January 28, 2010, he was sentenced as a fourth habitual offender, MICH. COMP. LAWS § 769.12, to a term of 4-20 years' imprisonment, consecutive to a separate term of imprisonment he was serving at the time of the offense.

    3.    Petitioner appealed as of right to the Michigan Court of Appeals raising two claims, the first through counsel and the second in a supplemental *pro se* brief:

> I. MR. JOHNSON WAS DENIED A FAIR TRIAL WHEN THE TRIAL COURT ADMITTED IRRELEVANT AND UNDULY PREJUDICIAL TESTIMONY AND INNUENDO CONCERNING OTHER BAD ACTS, INCLUDING ALLEGATIONS OF PRIOR POSSESSION OF CONTRABAND BY MR. JOHNSON; AND TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO OBJECT.
>
> II. TRIAL COUNSEL WAS CONSTITUTIONALLY INEFFECTIVE IN FAILING TO CHALLENGE THE CHAIN OF EVIDENCE AND ADMISSION OF PRISON WEAPON [SHANK] ALLEGEDLY FOUND IN APPELLANT'S CELL, WHERE THE EXHIBIT SHOWN TO THE JURY WAS NOT IN THE SAME CONDITION AS EVIDENCE FROM PHOTOGRAPHS TAKEN BY PRISON GUARDS; AS THE SHANK WAS ALTERED FROM ITS ORIGINAL STATE TO REFLECT THAT IT HAD A HANDLE, READY FOR DEADLY USE.

The court of appeals found no merit to petitioner's claims, and affirmed his conviction and sentence. *See People v. Johnson*, No. 296708, 2011 WL 923507 (Mich. Ct. App. Mar. 17, 2011) (per curiam).

    4.    Petitioner sought leave to appeal these issues to the Michigan Supreme Court. The Supreme Court denied petitioner's application for leave to appeal in a standard order. *See People v. Johnson*, 490 Mich. 859, 801 N.W.2d 877 (2011).

    5.    Petitioner, proceeding *pro se*, filed the instant application for a writ of habeas corpus on November 29, 2011. As grounds for the writ of habeas corpus, he raises the two claims that he

raised in the state courts.

6.    Respondent filed his answer on May 25, 2012.  He contends that petitioner's claims are without merit.

B.    *Factual Background Underlying Petitioner's Conviction*

Petitioner's conviction arises from the discovery of a handmade knife, or "shank," in his cell at the G. Robert Cotton Correctional Facility in Jackson, Michigan, on March 9, 2009.  The evidence adduced at trial is accurately summarized in petitioner's brief in support of his petition:

> Scott Norder testified that he was a Corrections Officer with the Michigan Department of Corrections, MDOC, and worked at the Cotton Correctional Facility. Norder was a guard in Mr. Johnson's cell unit and searched his cell on March 9, 2009. Norder stated that Mr. Johnson was in segregation and confined to a single cell of a 22 cell unit.  Due to medical needs, Mr. Johnson had been in a wheel chair for several years.  On the day in question, he was out of his cell receiving a hair cut.
> Norder conducted the search alone without witnesses.  During the search, Norder claimed to have found a 10 ½ inch piece of stainless steel, or shank, inside a medical box.  There was an ace bandage wrapped around it for a handle so that it could be used to stab or cut.  This item was not preserved for fingerprints.
> Though he never saw anyone pass anything into Mr. Johnson's cell, Norder alleged that items could be passed under the ¼" to ½" gap doorway of the cell.  He testified that prisoners passing contraband was a common problem.  Norder acknowledged that other prisoners entered Mr. Johnson's cell to mop it but that they were strip searched prior to entering and watched.  Prison trustees were not allowed in the segregation cells so Mr. Johnson could not have had direct contact with a trustee or porter.  The hallways in that unit and the exercise yard both had video cameras. However, Mr. Johnson was confined to a separate yard module when he went outside and Norder never saw anyone pass him anything while outside.
> Norder had searched Mr. Johnson's cell more than thirty times between October 2008 and March 2009.  There was no indication that the piece of metal found was from Mr. Johnson's cell.  There was also no evidence that Mr. Johnson sharpened the piece of metal.
> Norder admitted that his relationship with Mr. Johnson was not good.  Their relationship deteriorated after Norder alleged found contraband pain medication in Johnson's cell and wrote him [a] major misconduct.  Norder had heard rumors that Johnson had filed a grievance against him.  He asked to be moved from Mr. Johnson's cell unit partly due to their relationship.
> Raymond Woodrow testified that he was a corrections officer at Cotton Correctional Facility on March 9, 2009.  He was assigned to Mr. Johnson's unit and recalled Defendant being taken out of his cell that day for a hair cut.  Officer Norder

3

> shook down Johnson's cell while it was empty. Norder claimed to have found contraband in his cell. Woodrow acknowledged that Norder and Mr. Johnson did not get along and that Mr. Johnson had complained to him about Norder on prior occasions.
>
> Sergeant James Hose testified that he was working at the control center of the Cotton Correctional Facility, on the day the contraband was allegedly found in Mr. Johnson's cell. He saw a Xerox picture of the weapon and contacted the state police. Hose admitted that he was not present when the weapon was allegedly found. He testified that Mr. Johnson was alone in his cell 23 hours each day and two officers were present whenever he left it. At the conclusion of Hose's testimony, the prosecution rested.
>
> Lieutenant Wallace testified as a hostile witness for the defense. He was an assistant shift commander at Cotton Correctional Facility. Mr. Johnson approached him regarding harassment toward him by Officer Norder. Mr. Johnson put it in writing and asked to have Norder kept away from him for a number of reasons, including Johnson's claim that Norder would go through his possessions and legal mail. Wallace claimed he reviewed videotape and saw no evidence of unprofessional conduct. He noted that Norder was unhappy with his coworkers and did not believe that he had their support.
>
> At the conclusion of Wallace's testimony, defense counsel argued [] a Motion for Directed Verdict. The trial court denied the motion. There were no objections to the proposed jury instructions by counsel. Mr. Johnson was questioned regarding his right to testify in his own defense.

Br. in Supp. of Pet., at 1-3.

C.   *Standard of Review*

Because petitioner's application was filed after April 24, 1996, his petition is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996). *See Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997). Amongst other amendments, the AEDPA amended the substantive standards for granting habeas relief by providing:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

>      (2) resulted in a decision that was based on an unreasonable determination of
> the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"[T]he 'contrary to' and 'unreasonable application' clauses [have] independent meaning." *Williams v. Taylor*, 529 U.S. 362, 405 (2000); *see also*, *Bell v. Cone*, 535 U.S. 685, 694 (2002). "A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams*, 529 U.S. at 405-06); *see also*, *Early v. Packer*, 537 U.S. 3, 8 (2002); *Bell*, 535 U.S. at 694. "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also*, *Bell*, 535 U.S. at 694. However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also*, *Williams*, 529 U.S. at 409. As the Supreme Court has explained, the standard for relief under § 2254(d) "is difficult to meet, [and] that is because it was meant to be." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011). As the Court explained, "[s]ection 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice system,' not a substitute for ordinary error correction through appeal." *Id*. (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979) (Stevens, J., concurring in the judgment)). Thus, "[a]s a

condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id*. at 786-87.

By its terms, § 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with "clearly established federal law as determined by the Supreme Court." Thus, "§ 2254(d)(1) restricts the source of clearly established law to [the Supreme] Court's jurisprudence." *Williams*, 529 U.S. at 412. Further, the "phrase 'refers to the holdings, as opposed to the dicta, of [the] Court's decisions as of the time of the relevant state-court decision.' In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003) (citations omitted) (quoting *Williams*, 529 U.S. at 412). The relevant "clearly established law" is the law that existed at the time of the last state court decision to issue a reasoned decision on the claim, *see Greene v. Fisher*, 132 S. Ct. 38, 44-45 (2011), and in evaluating the reasonableness of that decision a federal habeas court is limited to the record that was before the state court at the time of its decision, *see Cullen v. Pinholster*, 131 S. Ct. 1388, 1398-99 (2011).

Although "clearly established Federal law as determined by the Supreme Court" is the benchmark for habeas review of a state court decision, the standard set forth in § 2254(d) "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early*, 537 U.S. at 8; *see also*, *Mitchell*, 540 U.S. at 16. Further, although the requirements of "clearly established law" are to be determined solely by the holdings of the Supreme Court, the

6

decisions of lower federal courts are useful in assessing the reasonableness of the state court's resolution of an issue. *See Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Phoenix v. Matesanz*, 233 F.3d 77, 83 n.3 (1st Cir. 2000); *Dickens v. Jones*, 203 F. Supp. 2d 354, 359 (E.D. Mich. 2002) (Tarnow, J.).

D.      *Other Acts Evidence (Claim I)*

Petitioner first contends that he was denied a fair trial by the introduction of evidence that contraband had been found in is cell on other occasions. The Court should conclude that petitioner is not entitled to habeas relief on this claim.

It is well established that habeas corpus is not available to remedy a state court's error in the application of state law. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("Today, we reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."). Thus, unless a violation of a state's evidentiary rule results in the denial of fundamental fairness, an issue concerning the admissibility of evidence does not rise to the level of a constitutional magnitude. *See Cooper v. Sowders*, 837 F.2d 284, 286 (6th Cir. 1988); *Davis v. Jabe*, 824 F.2d 483, 487 (6th Cir. 1987). "[A] federal habeas court has nothing whatsoever to do with reviewing a state court ruling on the admissibility of evidence under state law. State evidentiary law simply has no effect on [a court's] review of the constitutionality of a trial, unless it is asserted that the state law itself violates the Constitution." *Pemberton v. Collins*, 991 F.2d 1218, 1223 (5th Cir. 1993). As the Sixth Circuit has noted, "[e]rrors by a state court in the admission of evidence are not cognizable in habeas proceedings unless they so perniciously affect the prosecution of a criminal case as to deny the defendant the fundamental right to a fair trial." *Kelly v. Withrow*, 25 F.3d 363, 370 (6th Cir. 1994). In short, "[o]nly when the evidentiary ruling impinges on a specific constitutional protection or is so prejudicial that it amounts to a denial of due process may a federal court grant a

7

habeas corpus remedy." *Barrett v. Acevedo*, 169 F.3d 1155, 1163 (8th Cir. 1999); *see also*, *Coleman v. Mitchell*, 244 F.3d 533, 542 (6th Cir. 2001). Where a specific constitutional right–such as the right to confront witnesses or to present a defense–is not implicated, federal habeas relief is available only if the allegedly erroneously admitted evidence "is almost totally unreliable and . . . the factfinder and the adversary system will not be competent to uncover, recognize, and take due account of its shortcomings." *Barefoot v. Estelle*, 463 U.S. 880, 899 (1983).

As noted above, the issue here is not whether this evidence was properly admitted under the Michigan Rules of Evidence, but rather whether petitioner was denied a fair trial by the introduction of this evidence. This being the case, petitioner is not entitled to habeas relief even if the evidence was not properly admitted under Rule 404(b). Both the Supreme Court and the Sixth Circuit have repeatedly held that a defendant is not denied a fair trial by the admission of prior bad acts evidence which is relevant in the defendant's trial. *See Estelle*, 502 U.S. at 69-70; *Dowling v. United States*, 493 U.S. 342, 353-54 (1990); *Coleman v. Mitchell*, 268 F.3d 417, 439-40 (6th Cir. 2001); *Pennington v. Lazaroff*, 13 Fed. Appx. 228, 232 (6th Cir. 2001) (per curiam) (unpublished); *Manning v. Rose*, 507 F.2d 889, 893-95 (6th Cir. 1974). In short, "[t]here is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence," *Bugh*, 329 F.3d at 512, and thus petitioner is not entitled to habeas relief on this claim.

Further, petitioner cannot show that he was deprived of a fair trial by the introduction of this evidence. Petitioner's defense at trial was that there was "bad blood" between him and Norder and that Norder planted the shank in his cell. It was petitioner's counsel who first elicited the testimony about the prior contraband, and the prosecutor only explored the matter on redirect examination, without eliciting what the contraband was that was recovered. Petitioner's counsel revisited the issue

8

on re-cross examination, eliciting that the contraband was pain pills. *See Johnson*, 2011 WL 923507, at *1. Thus, as the court of appeals explained, "the testimony was narrowly tailored to address the issues brought up by [petitioner] himself, without straying into the irrelevant," and the testimony "was the entire basis for his defense that the guard was setting him up." *Id*. In these circumstances, petitioner cannot show that the admission of the evidence deprived him of a fair trial. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

E.      *Ineffective Assistance of Counsel (Claims I & II)*

Petitioner next contends that counsel was ineffective for failing to object to (1) the introduction of the other acts evidence, and (2) the introduction of the shank due to chain of custody problems. The Court should conclude that petitioner is not entitled to habeas relief on these claims.

1.      *Clearly Established Law*

The Sixth Amendment right to counsel and the right to effective assistance of counsel protect the fundamental right to a fair trial. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). To establish the ineffective assistance of counsel, petitioner must show that: (1) counsel's errors were so serious that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment;" and (2) counsel's deficient performance prejudiced the defense. *Id*. at 687. These two components are mixed questions of law and fact. *Id*. at 698. Further, "[t]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." *Id.* at 697. If "it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Id.* With respect to the performance prong of the *Strickland* test, a strong presumption exists that counsel's behavior lies within the wide range of reasonable professional assistance. *See id*. at 689; *see also O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994). "[D]efendant must overcome the

9

presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (citation omitted). "[T]he court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690. With respect to the prejudice prong, the reviewing court must determine, based on the totality of the evidence before the factfinder, "whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id.* at 695. It is petitioner's burden to establish the elements of his ineffective assistance of counsel claim. *See United States v. Pierce*, 63 F.3d 818, 833 (6th Cir. 1995) (petitioner bears the burden of establishing counsel's ineffectiveness); *Lewis v. Alexander*, 11 F.3d 1349, 1352 (6th Cir. 1993) (same).

As the Supreme Court has recently explained, *Strickland* establishes a high burden that is difficult to meet, made more so when the deference required by § 2254(d)(1) is applied to review a state court's application of *Strickland*:

> "Surmounting Strickland's high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. ----, ----, 130 S.Ct. 1473, 1485, 176 L.Ed.2d 284 (2010). An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the Strickland standard must be applied with scrupulous care, lest "intrusive post-trial inquiry" threaten the integrity of the very adversary process the right to counsel is meant to serve. *Strickland*, 466 U.S., at 689-690, 104 S.Ct. 2052. Even under *de novo* review, the standard for judging counsel's representation is a most deferential one. Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge. It is "all too tempting" to "second-guess counsel's assistance after conviction or adverse sentence." *Id.*, at 689, 104 S.Ct. 2052; *see also Bell v. Cone*, 535 U.S. 685, 702, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002); *Lockhart v. Fretwell*, 506 U.S. 364, 372, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993). The question is whether an attorney's representation amounted to incompetence under "prevailing professional norms," not whether it deviated from best practices or most common custom. *Strickland*, 466 U.S., at 690, 104 S.Ct. 2052.
> Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both "highly deferential," *id.*, at 689, 104 S.Ct. 2052; *Lindh v. Murphy*,

10

> 521 U.S. 320, 333, n. 7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), and when the two apply in tandem, review is "doubly" so, *Knowles*, 556 U.S., at ----, 129 S.Ct. at 1420. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. 556 U.S., at ----, 129 S.Ct. at 1420 . Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard.

*Harrington v. Richter*, 131 S. Ct. 770, 788 (2011).

    2.    *Analysis*

*a. Other Acts Evidence*

Petitioner contends that counsel was ineffective for failing to object to the introduction of evidence concerning the prior discover of contraband in his cell. The Michigan Court of Appeals rejected this claim, concluding that there was no basis to object because counsel "was the one eliciting the testimony." *Johnson*, 2011 WL 923507, at *2. Further, to the extent petitioner was arguing that counsel was ineffective for eliciting this testimony, counsel's conduct was a reasonable tactical decision "as the testimony helped form the basis of [petitioner's] defense that the guard had planted the shank based on their bad relationship." *Id*. Because this determination was reasonable, the Court should conclude that petitioner is not entitled to habeas relief.

As the court of appeals rightly concluded, counsel cannot be deemed ineffective for failing to object to testimony that counsel deliberately introduced. The real question, therefore, is whether counsel was ineffective for eliciting this testimony. The court of appeals's determination that counsel was not ineffective for eliciting this testimony was reasonable. The entire case come down to a credibility contest between Norder, a prison guard, and petitioner, an inmate in the prison. Petitioner's defense was that Norder had planted the shank in his cell. This was a reasonable strategy, as the evidence indicated that it would have been unlikely that another inmate could have planted the

shank in the cell. To support this claim, counsel had to give the jury a reason to believe that Norder would, in fact, plant a shank. The reason that counsel provided was that there was prior "bad blood" between the two, based on their previous relationship. Thus, the evidence of the prior contraband was relevant to and supportive of the only viable defense at counsel's disposal. The decision to elicit the testimony was therefore a reasonable tactical decision, and did not amount to deficient performance. *See Burt v. Berghuis*, No. 1:02-cv-623, 2007 WL 2791106, at *21 (June 13, 2007), *magistrate judge's report adopted*, 2007 WL 2491105, at *4 (W.D. Mich. Sept. 24, 2007); *Lovett v. Foltz*, 687 F. Supp. 1126, 1142-43 (E.D. Mich. 1988) (Cook, J.), a*ff'd*, No. 88-1687, 1989 WL 101522, at *3-*4 (6th Cir. Sept. 5, 1989) (per curium); *cf. Flieger v. Delo*, 16 F.3d 878, 887 (8th Cir. 1994). Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

### b. Shank

Petitioner also contends that counsel was ineffective for failing to object to the introduction of the shank at trial. A photograph taken at the time the shank was discovered showed that the Ace bandage was wrapped somewhat up the weapon, while at trial the bandage had moved down toward the end. Norder testified regarding the position of the bandage. Petitioner contends that the movement of the bandage showed that the shank had been tampered with and that counsel should have objected on chain-of-custody grounds. The court of appeals rejected petitioner's claim, concluding that "the jury was aware that the position of the Ace bandage had been different at the time the shank was found, and there was no evidence that the change reflected a break in the chain of evidence. Further, jurors were unlikely to be misled regarding the ability of the shank to be used as a weapon simply because the position of the Ace bandage had altered somewhat from when it was originally located." *Johnson*, 2011 WL 923507, at *2. Further, the court explained that the condition of the shank was irrelevant to petitioner's defense because his defense was that the shank had been planted.

*See id*. at *2 n.1. Because this determination was reasonable, the Court should conclude that petitioner is not entitled to habeas relief.

Most fundamentally, petitioner cannot show that he was prejudiced because, as the court of appeals observed, the condition of the shank and whether it had been altered was irrelevant to the defense. Petitioner claimed that the shank had been planted, and thus whether it had been altered was irrelevant to the only question in the case: whether the shank belonged to petitioner or had been placed in his cell by Norder (or someone else). Moreover, the position of the Ace bandage on the handle was irrelevant to whether the shank constituted a weapon. Petitioner contends that the placement of the Ace bandage, at the time of trial, near the end made it appear that the shank was more "weapon-like" because the bandage functioned as a handle. However, the statute under which petitioner was convicted did not require that the shank actually be a weapon. The statute makes it illegal for a prisoner to "have in his or her possession or under his or her control a weapon *or other implement which may be used to injure a prisoner or other person*, or to assist a prisoner to escape from imprisonment." MICH. COMP. LAWS § 800.283(4) (emphasis added). The implement need not have any particular "weapon-like qualities;" rather, "within the prison setting, the element which transforms an unauthorized article into a weapon is its potential to cause injury[.]" *People v. Osuna*, 174 Mich. App. 530, 532, 436 N.W.2d 405, 407 (1988). Here, regardless of where the Ace bandage was located, the shank was an implement with the potential to cause injury, and thus its possession was prohibited by § 800.283(4).

Morever, petitioner cannot show a reasonable probability that the shank would have been excluded had counsel objected. Under Michigan law, once a foundation is established for the evidence, "any deficiency in the chain of custody goes to the weight of the evidence rather than its admissibility." *People v. White*, 208 Mich. App. 126, 130-31, 527 N.W.2d 34, 36 (1994). Further,

13

as noted above the placement of the Ace bandage was not relevant to whether the shank was an implement with the potential to cause injury, and thus the alteration did detract from the probative force of the shank. *See* 2 MCCORMICK ON EVIDENCE § 213 (6th ed.) ("[Even an altered item of real evidence may still be admissible if the pertinent features which make it probative remain unchanged."). In short, the placement of the Ace bandage was irrelevant to whether the shank constitute a weapon under the statute; the placement was irrelevant to petitioner's defense that the shank had been planted; any problems in the chain of custody or alteration went to the weight of the evidence, not its admissibility; and the alteration was fully explained to the jury. In these circumstances, petitioner cannot show that he was prejudiced by counsel's failure to object to the introduction of the shank. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

F.     *Recommendation Regarding Certificate of Appealability*

1.     *Legal Standard*

As amended by the Antiterrorism and Effective Death Penalty Act, section 2253 provides that a petitioner may not appeal a denial of an application for a writ of habeas corpus unless a judge issues a certificate of appealability. *See* 28 U.S.C. § 2253(c)(1). The statute further provides that "[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). As the Sixth Circuit has noted, this language represents a codification of the Supreme Court's decision in *Barefoot v. Estelle*, 463 U.S. 880 (1983), and "[t]he AEDPA thus makes no change to the general showing required to obtain a certificate[.]" *Lyons v. Ohio Adult Parole Auth.*, 105 F.3d 1063, 1073 (6th Cir. 1997); *accord Slack v. McDaniel*, 529 U.S. 473, 483 (2000). Although the statute does not define what constitutes a "substantial showing" of a denial of a constitutional right, the burden on the petitioner is obviously less than the

14

burden for establishing entitlement to the writ; otherwise, a certificate could never issue. Rather, the courts that have considered the issue have concluded that "'[a] substantial showing requires the applicant to "demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues (in a different manner); or that the questions are adequate to deserve encouragement to proceed further."'" *Hicks v. Johnson*, 186 F.3d 634, 636 (5th Cir. 1999) (quoting *Drinkard v. Johnson*, 97 F.3d 751, 755 (5th Cir. 1996) (quoting *Barefoot*, 463 U.S. at 893 n.4)); *accord Slack*, 529 U.S. at 483-84. Although the substantive standard is the same, "[t]he new Act does, however, require that certificates of appealability, unlike the former certificates of probable cause, specify which issues are appealable." *Lyons*, 105 F.3d at 1073. (citing 28 U.S.C. § 2253(c)(3)).

Effective December 1, 2009, the newly created Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), 28 U.S.C. foll. § 2254. The rule tracks § 2253(c)(3)'s requirement that any grant of a certificate of appealability "state the specific issue or issues that satisfy the showing required by § 2253(c)(2)," Rule 11(a), but omits the requirement contained in the pre-amendment version of Federal Rule of Appellate Procedure 22(b)(1) that the court explain "why a certificate should not issue." FED. R. APP. P. 22(b)(1) (version effective prior to 2009 amendment); *see id*., advisory committee note, 2009 amendments. In light of the new Rule 11 requirement that the Court either grant or deny the certificate of appealability at the time of its final adverse order, I include a recommendation regarding the certificate of appealability issue here.

    2.    *Analysis*

If the Court accepts my recommendation regarding the merits of petitioner's claims, the Court should also conclude that petitioner is not entitled to a certificate of appealability. As explained

15

above, it is clear that petitioner's evidentiary claim presents an issue of state law that is not cognizable on habeas review, and thus the resolution of this claim is not reasonably debatable. Because counsel's decision to elicit testimony of a prior discovery of contraband was supportive of petitioner's defense that the shank had been planted, the resolution of petitioner's ineffective assistance claim based on counsel's elicitation of this evidence is not reasonable debatable. Finally, because the alteration in the placement of the Ace bandage was irrelevant to the issues in the case and in any event did not render the shank inadmissible, the resolution of petitioner's claim that counsel was ineffective for failing to object to the introduction of the shank is not reasonably debatable. Accordingly, the Court should deny petitioner a certificate of appealability.

G.     *Conclusion*

In view of the foregoing, the Court should conclude that the state courts' resolution of petitioner's claims did not result in a decision which was contrary to, or which involved an unreasonable application of, clearly established federal law. Accordingly, the Court should deny petitioner's application for the writ of habeas corpus. If the Court accepts this recommendation, the Court should also deny petitioner a certificate of appealability.

III.    NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in FED. R. CIV. P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *See Willis v. Secretary of Health*

*& Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991). *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

                                        s/Paul J. Komives
                                        PAUL J. KOMIVES
                                        UNITED STATES MAGISTRATE JUDGE

Dated: 12/20/12

> The undersigned certifies that a copy of the foregoing order was served on the attorneys of record and by electronic means or U.S. Mail on December 20, 2012.
>
>                         s/Eddrey Butts
>                         Case Manager